**DIVERSE ELEMENTS, INC., Plaintiff,**

**v.**

**ECOMMERCE, INC., Defendant.**

**Case No. 1:13–cv–24109–UU.**

United States District Court,
S.D. Florida.

Signed March 19, 2014.

Amy E. Tabor, Cory S. Fein, Cynthia B. Chapman, Michael A. Caddell, Caddell & Chapman, Houston, TX, Lance August Harke, Sarah Clasby Engel, Harke Clasby

**1380**

& Bushman LLP, Miami Shores, FL, for Plaintiff.

Benjamin Lawrence Reiss, Greenberg Traurig, Miami, FL, Lawrence D. Walker, Taft, Stettinius & Hollister, LLP, Columbus, OH, for Defendant.

### ORDER ON DEFENDANT'S MOTION

URSULA UNGARO, District Judge.

THIS CAUSE is before the Court upon Defendants' Motion to Dismiss Plaintiff's Complaint, D.E. 18, filed on January 10, 2014. Plaintiff filed its Response, D.E. 24, on January 27, 2014. Defendant filed its Reply, D.E. 27, on February 6, 2014. Therefore, this Motion is now ripe for disposition. Also before the Court is Plaintiff's Motion to Strike Improper Reply, D.E. 32, filed on February 24, 2014. Defendant filed its Response, D.E. 34, on February 27, 2014. Therefore, this Motion is now ripe for disposition. Also before the Court is Defendant's Agreed Motion to Treat Defendant's Motion to Dismiss for Improper Venue as a Motion to Transfer Under 28 U.S.C. § 1404(a). D.E. 31.

THE COURT has considered the pertinent portions of the record and is otherwise fully advised in the premises. Defendant argues that this action should be transferred to Ohio, based on the forum selection clause it added to the Terms of Service in December, 2008. D.E. 19–1 at 25. For the reasons set forth below, the Court denies Defendants' Motion to Transfer. The Court grants Plaintiff's Motion to Strike Improper Reply.

### BACKGROUND

This action arises out of a web hosting agreement between Plaintiff Diverse Elements, Inc. d/b/a Innovative Investment Groups ("IIG") and Defendant Ecommerce, Inc. d/b/a IX Web Hosting ("IX Web Hosting"). D.E. 1 ¶ 6. IIG alleges that on September 26, 2006, IIG entered into a contract with IX Web Hosting for web hosting services, which included five free domain registrations. D.E. 1 ¶ 6. The 2006 agreement included a Price–Freeze Guarantee stating "[IX Web Hosting] will never increase monthly fees for existing subscribers." D.E. 1 ¶ 8. Additionally, IIG alleges that IX Web Hosting had advertised that its free domain registrations would be "Free for Life!" D.E. 1 ¶ 7. IIG alleges that in late 2011, IX Web Hosting began improperly charging for the "Free for Life" domain registrations. D.E. 1 ¶ 11. IIG further alleges that due to imposition of these charges, IX Web Hosting has improperly debited approximately $300 from IIG's account. D.E. 1 ¶ 16. IIG's Complaint also contains class action allegations that define the class as injured IX Web Hosting customers. D.E. 1 ¶ 24.

Pursuant to the forum selection clause in the 2006 Terms of Service ("TOS"), Florida law governs the TOS and any dispute must be brought in a court of competent jurisdiction in Miami, Florida. D.E. 1–3 at 6–7. However, IX Web Hosting periodically "updates" the TOS. Since December 2008, the TOS has provided that subscriptions to its web hosting services are governed by Ohio law and any dispute must be brought in a court of competent jurisdiction in Columbus, Ohio. D.E. 19–1 at 25. IX Web Hosting argues that pursuant to its updates, the 2008 forum selection clause governs the present action and mandates transfer to a court in Ohio. D.E. 18. IIG argues with respect to the specific charges on which this lawsuit is based, IIG never accepted the TOS as updated since 2006, including the forum selection and choice of law provisions. D.E. 24.

### LEGAL STANDARD

Under 28 U.S.C. § 1404(a), "a district court may transfer any civil action

to any other district or division where it might have been brought" when it is convenient for the parties and witnesses, or in the "interest of justice." "When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause." *Atl. Marine Contr. Co. v. U.S. Dist. Court for the W. Dist. of Tex.,* — U.S. ——, 134 S.Ct. 568, 581, 187 L.Ed.2d 487 (2013). "Only under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied." *Id.* This analysis, however, "presupposes a contractually valid forum-selection clause." *Id.* at 581 n. 5, 134 S.Ct. 568. To establish a valid forum selection clause, a party must first establish that there is an valid contract that contains a forum selection clause. *Cf. Segal v. Amazon.com, Inc.,* 763 F.Supp.2d 1367, 1369 (S.D.Fla.2011). Where there is a valid contract with a forum selection clause, the forum selection clause is "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances." *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 10, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972).

## DISCUSSION

The issue presented by the present Motion is not whether to enforce a valid forum-selection clause, but instead to determine whether an enforceable contract requiring IIG to litigate in Ohio exists. IIG objects to being bound by an agreement that it contends it did not accept. D.E. 24. As the moving party, IX Web Hosting bears the burden of showing that IIG accepted the updated TOS, with the amended forum selection clause, to create a valid contract. *See Dubai World Corp. v. Jaubert,* No. 09–cv–14314, 2011 WL 579213, at *9 (S.D.Fla. Feb. 9, 2011). Defendant urges that IIG accepted the updated TOS (1) by continuing to use IX

Web Hosting's services after the TOS were changed or (2) by ordering additional domain names from IX Web Hosting between 2008 through 2012 and accepting the amended TOS during those transactions. D.E. 18; D.E. 27.

■ As to Defendant's first contention, IX Web Hosting argues that because it reserved the right to change or modify the TOS at any time without notice, IIG agreed to the TOS changes when it continued to use IX Web Hosting's services after these changes were added to the TOS. D.E. 18 at 8. IX Web Hosting relies heavily on language in the original contract, which states "IX Web Hosting reserves the right to modify the Terms of Service at any time, and without notice as is deemed necessary by IX Web Hosting." D.E. 1–3 at 2. IIG argues that IX Web Hosting cannot unilaterally change the terms of a contract once it is formed and that IIG never received notice of any modifications because its subscription was set to renew automatically. D.E. 24 at 3. The Court finds that IX Web Hosting cannot bind IIG to an amended TOS without any notice simply because it reserved the right to alter the TOS at any time.

■ Usually, parties must agree to modifications of contracts and support the modification with additional consideration. *See In re Estate of Johnson,* 566 So.2d 1345, 1347 (Fla.Dist.Ct.App.1990). Parties can, however, provide for modification in the contract and subsequently modify the contract with no new and independent consideration. *See Bolus v. Morrison Homes, Inc.,* No. 8:08–cv–1957, 2009 WL 4730601, at *2 (M.D.Fla. Dec. 9, 2009). This principle does not, however, allow parties to reserve the unfettered right to amend contracts without notice and at any unspecified time like IX Web Hosting attempted to do in the 2006 TOS.

■ A contract is illusory, and therefore invalid, if one of the parties' promises "appears on its face to be so insubstantial as to impose no obligation at all on the promisor." *Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1311 (11th Cir.1998) (finding that when a promisor "says, in effect, 'I will if I want to'" then the promise is illusory). A promise is illusory where one party can change or end the contract at its own option while the other party is still bound to its performance. *Feldkamp v. Long Bay Partners, LLC*, 773 F.Supp.2d 1273, 1284 (M.D.Fla.2011) ("If defendant could amend the refund policy and discontinue operation of the Club at its option, then defendant effectively made no promises to plaintiffs.").

■ Where a party reserves its right to modify a contract, that reservation must be subject to certain limitations, otherwise the contract is illusory. When applying Florida law, the Western District of Oklahoma found that an internet service provider's reservation of the right to amend its TOS unilaterally did not render the TOS illusory because it was subject to two limitations: providing its customers with advance notice, and allowing customers to reject any proposed change. *Hancock v. Am. Tel. & Tel. Co.*, 804 F.Supp.2d 1196, 1210 (W.D.Okla.2011). This is consistent with other cases that find a party can only reserve its right to unilaterally change a contract where that reservation is subject to limitations, such as reasonable notice. *See TradeComet.com LLC v. Google, Inc.*, 693 F.Supp.2d 370, 376 (S.D.N.Y.2010) ("[T]he fact that one party reserves the implied right to terminate or modify a unilateral contract is not fatal to its enforcement, if the exercise of the power is subject to limitations, such as fairness and reasonable notice."); *Roling v. E*Trade Sec., LLC*, 756 F.Supp.2d 1179, 1191 (N.D.Cal.2010) (finding plaintiffs had properly pled unjust enrichment where defen-

dant had reserved its right to unilaterally, and without notice, change the operative fee schedule).

Here, IX Web Hosting improperly attempted to "reserve[ ] the right to modify the Terms of Service at any time, and without notice." D.E. 1–3 at 2. This reservation is invalid as a matter of law and cannot bind IIG to altered terms without having given IIG notice of the alteration or the opportunity to reject the modification. Therefore, IX Web Hosting cannot rely on this reservation to argue that IIG accepted the amended TOS, which contain the Ohio forum selection clause.

■ The TOS has a severability clause that provides "[i]f any provision of this TOS shall be held to be invalid or unenforceable for any reason, the remaining provisions shall continue to be valid and enforceable." D.E. 1–3 at 6. Valid severability clauses are enforceable under Florida law. *Energy Smart Indus., LLC v. Big R of Lamar, Inc.*, No. 11–23627–CIV, 2012 WL 3061600, at *11 (S.D.Fla. July 26, 2012). Therefore, instead of rendering the entire contract invalid, the invalid reservation is severable and the remainder of the 2006 TOS constitute a valid contract.

■ As to IX Web Hosting's second contention that IIG acquiesced to venue in Ohio by ordering additional domain names from it between 2008 and 2012, the Court finds IX Web Hosting's argument unpersuasive and muddled. As a preliminary matter, the Court will not consider the evidence submitted with Amanda Walsh's supplemental affidavit because it should have been submitted and explained with her initial affidavit. In paragraphs 10 and 11 of her opening affidavit, Amanda Walsh states that "IIG placed an order with IX Web Hosting pursuant to its Unlimited Pro web hosting plan." D.E. 19–1 ¶¶ 10, 11. With these paragraphs, Ms. Walsh should have 1) attached evidence of these transactions; and 2) explained what "pur-

suant to" means, exactly. She did not do this until submitting her supplemental affidavit, which is improper. *See Giglio Sub s.n.c. v. Carnival Corp.*, 12–21680–CIV, 2012 WL 4477504, at *2 (S.D.Fla. Sept. 26, 2012).[1]

█ Although it appears that IIG may have ordered additional domain names from IX Web Hosting between 2008 and 2012 during which it accepted the updated TOS containing the Ohio forum selection clause, IIG urges that the specific charges that are the subject of this litigation emanate from the 2006 TOS and its subscription to the "Unlimited Pro" plan. And because IX Web Hosting has not produced sufficient evidence to show that the charges giving rise to this litigation were incurred other than pursuant to IIG's subscription to the "Unlimited Pro" plan gov-

erned by the 2006 TOS, IX Web Hosting's motion fails. Accordingly, it is

ORDERED AND ADJUDGED that Defendant's Agreed Motion, D.E. 31, is GRANTED. It is further

ORDERED AND ADJUDGED that Defendant's Motion to Dismiss, D.E. 18, is DENIED. It is further

ORDERED AND ADJUDGED that Plaintiff's Motion to Strike Improper Reply, D.E. 32, is GRANTED.

ORDERED AND ADJUDGED that Defendants SHALL file an answer to the remaining counts within ten days of this Order's issuance.

---

1. Even if the Court were to consider Ms. Walsh's supplemental affidavit, the Court is still not persuaded by IX Web Hosting's argument. Although IIG may have been required to accept IX Web Hosting's updated TOS, including the Ohio forum selection clause, when it registered new domain names in 2010, there is nothing that indicates IIG would be on notice that this clause had become incorporated into the original 2006 TOS that governs IIG's "Unlimited Pro" plan subscription and gives rise to this cause of action.